IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 08-cv-00172-CMA-BNB

JOSE GONZALES,

Plaintiff,

v.

DR. MCLAUGHLIN,
GYLNETTE SMITH, and
P. A. ROBERTS,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the **Defendants' Motion to Dismiss** [Doc. #12, filed 5/8/08] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED.

## I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d

1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II.  BACKGROUND

The plaintiff initiated this case on January 18, 2008, when he tendered his Prisoner Complaint [Doc. #3] (the "Complaint") and a motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 [Doc. #1].[1]  The Complaint contains the following allegations:

1.  On or about June 21, 2002, the plaintiff was assaulted by several inmates at the Sterling Correctional Facility. He was taken to the medical department where he was treated and released. *Complaint*, p. 6.[2]

2.  On or about July 26, 2002, the plaintiff was transferred to the Buena Vista Correctional Facility. He started experiencing pain in his shoulder, and he submitted a kite to the medical department for treatment. He was seen by P.A. Roberts. The plaintiff requested an x-ray. The medical department kept telling him there was nothing wrong with him that would warrant an x-ray. Id.

3.  From December 19, 2002, to December 30, 2002, the plaintiff was seen by Glynette Smith in the Mental Health Department. When the plaintiff told her he was in an enormous

---

[1] A complaint is filed for purposes of the statute of limitation when it is tendered to the Clerk of the Court with a motion to proceed *in forma pauperis*. Jarrett v. U.S. Sprint Comm'cns. Co., 22 F.3d 256, 259 (10th Cir. 1994). See also Calvert v. Roadway Exp., Inc., 32 Fed. Appx. 510, 512 (10th Cir. Feb. 19, 2002); Green v. Busha, 59 F.3d 178, 1995 WL 386489, at *1-2 (10th Cir. June 30, 1995).

[2] The plaintiff does not consecutively number the pages of the Complaint. Therefore, I utilize the pagination assigned by the Court's docketing system.

2

amount of pain, she told him that the best way to cure his pain was to take a bunch of pills, lie down in his cell, and he would be dead and free of pain. Id.

  4. On April 10, 2003, Ms. Judy Avery wrote a letter to the plaintiff's sister "explaining that [he] was receiving medical attention." The Mexican Consulate wrote several letters and placed phone calls inquiring about the plaintiff's health. The doctors told the Consulate that the plaintiff was receiving the best medical treatment of all the inmates. Ms. Avery and the doctors "never mentioned that [the plaintiff] received an x-ray for a brain scan." Id. at p. 5

  5. The plaintiff was seen by Dr. McLaughlin on several occasions. Dr. McLaughlin refused to give the plaintiff a proper examination. He placed the plaintiff on the wrong medications for his injuries. On May 15, 2003, P.A. Roberts and Dr. McLaughlin stated "I said they were never telling the truth and that I needed an interpreter because the medical providers claimed that they couldn't understand my broken English." Id. at p. 6.

  6. On or about March 31, 2004, the plaintiff filed an amended petition for writ of mandamus pursuant to C.R.C.P. 106(a)(2). The petition addressed cruel and unusual punishment and racial discrimination by medical staff at the Buena Vista Correctional Facility. Id. The Chaffee County District Court dismissed his petition on June 22, 2004. The state appellate court dismissed his appeal on February 2, 2005. Id.

  7. On October 11, 2004, the plaintiff was seen by P.A. Roberts. The plaintiff explained to Roberts that he had nose bleeds and pain behind his left ear. He was given Motrin, Advil, and Elavil. He "kept explaining to P.A. Roberts that it wasn't working." Each time he made an appointment, he was charged a $5.00 co-pay for an examination without results. Id. at p. 5.

8. On November 8, 2004, the plaintiff filed a "racial discrimination grievance against Dr. McLaughlin and medical staff" at the Buena Vista Correctional Facility. He also wrote several kites to the mental health department. Id.

9. On November 22, 2004, he was seen by Dr. McLaughlin. Dr. McLaughlin told the plaintiff that he would prescribe petroleum jelly for his nose bleeds. The plaintiff informed Dr. McLaughlin that the problem was a head injury from being beaten at another facility, not nose bleeds. The plaintiff told Dr. McLaughlin that he "can't tell what's wrong with a head injury without X-Rays." P.A. Roberts and Dr. McLaughlin would not believe the plaintiff. They told him that because he is a Mexican National, he was "getting some of the best treatment, better than any that would [sic] receive in New Mexico because American doctor's [sic] are better trained." Id.

10. On December 5, 2004, the plaintiff filed a step two grievance against Dr. McLaughlin for prescribing the wrong medication. Id.

11. From January 29, 2005, until February 9, 2005, the petitioner submitted several kites to see Dr. McLaughlin for headaches and nose bleeds. Id.

12. On or about April 5, 2005, the plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 in this Court. On June 29, 2005, the case was dismissed without prejudice at the plaintiff's request so that he could exhaust his administrative remedies. Id. at p. 6.

13. On August 1, 2005, the plaintiff filed "another" step one grievance. On August 17, 2005, he filed a step two grievance. On March 30, 2006, he filed a step three grievance "after being denied access to the court's [sic] by the Defendant's [sic] who deliberately delayed the answereing process for answereing [sic] grievances." Id. at p. 5.

The Complaint asserts two claims. Claim One alleges that the defendants failed to answer grievances in violation of the plaintiff's First Amendment right to access the courts. Id. at p. 5. Claim Two alleges deliberate indifference to the plaintiff's medical needs in violation of the Eighth Amendment.[3] Id. at p. 6.

### III. ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

The defendants assert that the plaintiff's claims regarding his medical treatment are barred by the statute of limitation. Actions asserted under 42 U.S.C. § 1983 are subject to the general personal injury limitation period of the state in which the action arose. Hunt v. Bennett, 17 F.3d 1263, 1265 (10th Cir. 1994). The appropriate statute of limitation for §1983 actions arising in Colorado is two years. Id. at 1266; Colo.Rev.Stat. § 13-80-102. Federal law rather than state law determines when a cause of action accrues. See Industrial Constructors Corp. v. United States Bureau of Reclamation, 15 F.3d 963, 968 (10th Cir. 1994). "The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." Id. at 969. "A civil rights action accrues

---

[3]To the extent the plaintiff attempts to bring other claims, those claims are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

when facts that would support a cause of action are or should be apparent." Fratus v. Deland, 49 F.3d 673, 675 (10th Cir. 1995).

The plaintiff's allegations regarding medical care begin on July 26, 2002, when he was first examined by P.A. Roberts. The allegations end on February 9, 2005, the end of the time period when he submitted several kites to see Dr. McLaughlin for headaches and nose bleeds. He knew of the existence and cause of his alleged injuries as evidenced by the grievances he submitted and the petition for writ of mandamus he filed in the Chaffee County District Court in March 2004. *Complaint*, Exs. A-I, L. Absent tolling, the statute of limitation on his medical claims expired on February 9, 2007.

The issue of tolling is governed by Colorado state law. See Fratus v. DeLand, 49 F.3d 673, 675 (10th Cir. 1995). Colorado's equitable tolling provisions are "limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." Dean Witter Reynolds, Inc. v. Hartman, 911 P.2d 1094, 1099 (Colo. 1996).

The plaintiff states that he "brings his claims under the 'Continuing violation' doctrine." *Complaint*, p. 5. However, the Tenth Circuit Court of Appeals has not extended the continuing violation doctrine to section 1983 actions. Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir. 1994); Slusher v. Gabler, 36 F.3d 1105, 1994 WL 504310, *2 (10th Cir. Sept. 15, 1994).

The plaintiff further claims that he is a Mexican National; he does not understand the American law system; and he is incarcerated without the assistance of an interpreter or counsel. *Motion to Reconsider* [Doc. #26] (the "Response"). However, it is clear from the Complaint's allegations and attachments that he filed numerous grievances, a petition for writ of mandamus,

and a civil action in this Court. It is not plausible that the plaintiff was prevented from filing a timely action in this Court because he lacked an understanding of the system.

Finally, the plaintiff implies that the defendants deliberately delayed his ability to file an action in this Court because they did not timely answer his grievances. *Complaint*, p. 5 (last sentence). He alleges that he filed a civil action in this Court on April 5, 2005, but on June 29, 2005, it was dismissed without prejudice at the plaintiff's request so that he could exhaust his administrative remedies. He further alleges that on August 1, 2005, he filed "another" step one grievance; on August 17, 2005, he filed a step two grievance; and on March 30, 2006, he filed a step three grievance "after being denied access to the court's [sic] by the Defendant's [sic] who deliberately delayed the answering process for answereing [sic] grievances." Id.

The filing of an administrative grievance can toll the statute of limitations until the administrative remedies have been exhausted. See Roberts v. Barreras, 484 F.3d 1236, 1238 (10th Cir.2007) (stating that "every circuit to address the issue has held that the filing of a mandatory administrative grievance tolls the statute of limitations for § 1983 and Bivens claims").

The plaintiff alleges that he submitted the step one grievance on August 1, 2005, *Complaint*, p. 5, but the attachments to the Complaint show that he submitted it on June 19, 2005. Id. at p. 19. The June 19, 2005, date is more favorable to the plaintiff, so I will use that date in my analysis. In the grievance, the plaintiff complains that he saw Glynette Smith on or about January 2003, and she told him that ingestion of pills would solve his problems because he would be dead. He further states that he was advised by the United States Magistrate Judge to

7

exhaust this issue. Finally, he requested a brain scan for a head injury he "suffered over 2 years ago."

It is clear from the face of the grievance and the allegations of the Complaint that the plaintiff submitted the grievance more than two years after he had reason to know of the existence and cause of the injuries alleged in the grievance. Therefore, this grievance and the step two and step three grievances that followed, were filed *after* the statute of limitation had already expired on these claims. The filing of grievances does not toll a statute of limitation that has already expired.

I respectfully RECOMMEND that the Motion be GRANTED and that Claim Two be dismissed as barred by the statute of limitation.

Claim One alleges that the defendants' failure to timely answer these grievances violated the plaintiff's First Amendment right to access the courts. The right of access to the courts is a fundamental constitutional right. Bounds v. Smith, 430 U.S. 817, 828 (1977). An inmate alleging denial of access to the courts must allege an actual injury. Lewis v. Casey, 518 U.S. 343, 349 (1996); Cosco v. Uphoff, 195 F.3d 1221, 1224 (10th Cir. 1999). To establish actual injury, the inmate must show that "the denial of legal resources hindered the prisoner's efforts to pursue a nonfrivolous claim." Lewis, 518 U.S. at 356; Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996) (citing Lewis, 518 U.S. at 351).

Here, the Complaint does not contain any specific factual allegations which would plausibly support a claim that the defendants' failure to timely answer his grievances hindered him from pursuing a nonfrivolous claim. To the contrary, although the claim is largely unintelligible, the plaintiff appears to be asserting that the defendants' delay in answering his last

round of grievances prevented him from filing this action--an action which is barred without regard to the defendants' alleged delay.

I respectfully RECOMMEND that Claim Two be DISMISSED for failure to state a claim upon which relief can be granted.

## IV.  CONCLUSION

I respectfully RECOMMEND that the Motion be GRANTED and that Claim One be DISMISSED as barred by the statute of limitation.

I further RECOMMEND that Claim Two be DISMISSED for failure to state a claim upon which relief can be granted.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated February 25, 2009.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge